UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MASTER FILE NO. 10-MD-2137
MDL NO. 2137

IN RE: SIGG SWITZERLAND (USA), INC. ALUMINUM BOTTLES

MARKETING AND SALES PRACTICES LITIGATION

**MEMORANDUM OPINION AND ORDER**

Numerous motions are pending in this case.  The Court is prepared to address several of them.  The relevant facts are those set forth in the Court's Memorandum Opinion dated January 7, 2011.

**I.**

When a motion to dismiss is filed under Rule 12(b)(6), the Court must look to the Complaint to determine whether it states a claim for which relief is available.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[The] [f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must be sufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal.*, 129 S.Ct. at 1949.  Although a Complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, it must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**II.**

The Court will initially address Defendant's arguments that reach all or most of Plaintiffs' claims.

Defendant argues that all claims should be dismissed because Plaintiffs have failed to adequately plead causation.  Defendant has two main arguments: 1) Plaintiffs factually misrepresent Sigg's statements regarding the presence of BPA in the liners of their bottles and 2) Plaintiffs do not sufficiently tie Defendant to third party statements regarding the presence of BPA in Sigg's bottles or don't even identify the source of this information.  Neither of these arguments is strong enough to justify dismissal of Plaintiffs' complaint.

Plaintiffs Johnson, Nexica and Tantibanchachai all claim to have learned that Sigg bottles were "BPA-free" from Sigg's website or a Sigg press release, as well as from other sources. (Second Am. Compl. ¶¶ 59, 79 and 84.)  Defendant argues that these Sigg sources never stated that the bottles were "BPA-free," and therefore these Plaintiffs' allegations are "demonstrably false."  (Def.'s Mot. Dismiss at 8.)  The parties dispute whether the Court can properly consider the content of Sigg's website at the motion to dismiss stage.  "Matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais and Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  "However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so" to prevent the circumstance where "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* at 89.

This is not such a circumstance.  All of these plaintiffs claim to have learned that Sigg's bottles were BPA-free from multiple sites, not just Sigg's website or press release.  Besides, a

2007 Sigg press release quoted in the Second Amended Consolidated Complaint states that "SIGG bottles have been thoroughly tested in Europe to ensure 0.0% leaching of any substance - no trace of BPA, BPB or any phthalates." (Second Am. Compl. ¶23.) While Plaintiffs did not quote any SIGG material that uses the phrase "BPA-free," the complaint "must [only] contain sufficient factual matter . . . to draw the reasonable inference that the defendant" represented and plaintiffs understood SIGG bottles to be free of the compound BPA. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

The Second Amended Consolidated Complaint provides both general and Plaintiff-specific allegations addressing Defendant's second causation argument. Generally, Plaintiffs claim that "[p]rior to obtaining their SIGG bottles, each of the Plaintiffs became aware of the potential harm associated with exposure to BPA ingestion by virtue of news stories, Internet articles and newsletters, research they themselves conducted, and research conducted by members of their immediate families and close friends that was relayed to them." (Second Am. Compl. ¶37.) Furthermore, Plaintiffs state that "[e]ach Plaintiff also came to understand that SIGG bottles were BPA-free." (Second Am. Compl. ¶39.) Plaintiffs specifically alleged numerous statements and omissions by Defendant from which a reasonable consumer could believe that Defendant's bottles were BPA-free. (Second Am. Compl. ¶36 (b)). Plaintiffs further plead that they "all decided to purchase SIGG bottles based on . . . the . . . understanding that the bottles were BPA-free" (Second Am. Compl. ¶40), and that "[h]ad SIGG disclosed the truth about its bottles, Plaintiffs (and reasonable consumers) would not have bought the bottles," (Second Am. Compl. ¶ 36(f)). These allegations sufficiently state that, generally, Plaintiffs relied upon statements made or directed by Defendant or material omissions of Defendant in

making their purchase decisions.

Defendant points to deficiencies in specific Plaintiff's allegations with regards to causation.  For instance, Defendant states that "Plaintiffs Brost, Frederickson, Keane and Lopez fail to attribute the alleged misstatements on which they relied to SIGG."  (Def.'s Mot. Dismiss at 11.)  However, Plaintiffs generally allege that "[e]ven where the information was published by third parties, the 'BPA-free' claim was typically attributed to SIGG or SIGG's representatives." (Second Am. Compl. ¶39.)  Defendant also claims that because Plaintiff Matz cannot remember how she learned that SIGG bottles were BPA-free, her claims must be dismissed.  (Def.'s Motion Dismiss at 7.)  However, a complaint must "give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible."  *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal,* 129 S.Ct. At 1949-50).  In conjunction with the allegations applicable to all plaintiffs, Plaintiff Matz's allegations are sufficient to survive a motion to dismiss.  Thus, Defendant's objection based on causation to all claims in the Second Amended Consolidated Complaint fails.

Originally, Defendant argued that all claims of Kentucky Plaintiffs should be dismissed because Kentucky has refused to recognize claims based on "speculative product risks; Defendant relied on *Wood v. Wyeth-Ayerst Labs*, 82 S.W.3d 849 (Ky. 2002).  Defendant did not address this argument in its motion to dismiss the Second Amended Consolidated Complaint. Regardless, the Court finds that *Wood* is distinguishable from the present case and does not present a bar to the Kentucky Plaintiffs' claims.

In *Wood*, the plaintiff had ingested a drug manufactured by the defendant that studies had

linked to increased health risks.  Although uninjured at the time of filing the lawsuit, Plaintiff

sought recovery for the potential of injury under theories of negligence, strict liability, concert of

action, and enterprise liability.  The Kentucky Supreme Court rejected all of Plaintiff's claims.

In doing so, the court determined that "recovery *on a theory of tort*, like negligence or strict

liability as sought here, requires a plaintiff to show some present physical injury to support a

cause of action."  *Id.* at 851-52 (emphasis added).

Wood has no effect on this case.  Plaintiffs' claims are not based on "speculative physical

injuries," but rather, on potential economic injuries.  Plaintiffs allege that had Defendant not

misled them regarding the BPA contents of Defendant's bottles, Plaintiffs would not have paid

the high premium for the bottles that they did.  These are basic fraud and warranty-based claims

alleging typical injuries.  The *Wood* opinion itself does not alter the viability of these claims.

### III.

Plaintiffs initially asserted claims in contract and express warranty.  Quite properly, they

have dropped these claims from the second amended consolidated complaint.

Most Plaintiffs purchased their bottles from third-party retailers and never had any direct

contact with Defendant.  Most Plaintiffs never actually entered a contract with Defendant.  Put

simply, without alleging any facts to support Plaintiffs' basic assertion that "SIGG entered into a

contract with the Plaintiffs and the Class to sell them BPA-free bottles," Plaintiffs' breach of

contract claim could not proceed.

Plaintiffs have also decided not to pursue an express warranty claim.  While the express

warranty claim appeared to be the heart of Plaintiffs' argument, there are several reasons it might

have been difficult for this claim to proceed, at least on a class action basis.  To construe an

express warranty, the "affirmation of fact or promise . . . which relates to the goods" must

"become[ ] part of the basis of the bargain." UCC § 2-313(1)(a). Such reliance might

necessitate a more individualized inquiry than feasible in a class action. Furthermore,

Defendants argued that this claim failed for either lack of privity or notice. However, there are

exceptions to these requirements that may be applicable. *See, e.g., Clark v. Danek Med., Inc.*, 64

F.Supp.2d 652 , 655 (W.D.Ky. 1999) (stating "Kentucky is one of those states whose tort law

does not require strict privity between the defendant and the ultimately defrauded party") and

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996) (recognizing exceptions to the

notice requirement in breach of warranty claims). Regardless, Plaintiffs have dropped this claim

and the Court will not speculate on the rationale of this decision or the plausibility of this claim.

**IV.**

Finally, the Court considers a more contested matter: Plaintiffs' claim for breach of

implied warranty of merchantability. Defendant contends that the facts pled in the consolidated

complaint simply do not properly allege this cause of action.

The implied warranty of merchantability is a creature of the UCC. To succeed on such a

claim, Plaintiffs must show that the bottles they purchased were unmerchantable. UCC § 2-

314(2)(c) provides that goods are merchantable when they "are fit for the ordinary purposes for

which goods of that description are used." UCC § 2-314(2)(c). Kentucky, Minnesota, Texas,

Illinois and California have each adopted this language in their respective versions of the UCC.

According to Defendant, the "ordinary purpose" of the water bottles was to hold liquid for

drinking. The consolidated complaint does not allege that the bottles did not fulfill this purpose.

Plaintiffs counter that the product's"ordinary purpose" was to provide "BPA-free bottles."

6

To properly define what constitutes the "ordinary purpose," the Court looks for guidance to the commentary on UCC § 2-314.  The commentators distinguish between products liability tort law and the implied warranty of merchantability.  In comment 7, they provide the following example:

> [S]uppose that the seller makes a representation about the safety of a lawn mower that becomes part of the basis of the buyer's bargain.  The buyer is injured when the gas tank cracks and a fire breaks out.  If the lawnmower without the representation is not defective under applicable tort law, it is not unmerchantable under [§ 2-314].  On the other hand, if the lawnmower did not conform to the representation about safety, the seller made and breached *an express warranty* and the buyer may sue under Article 2.

(emphasis added).  In other words, a seller's express warranties usually will not define the "ordinary purpose" of a product under § 314.  Although the commentary example concerns a tort claim, it suggests that the proper remedy where a manufacturer makes express promises about product safety is a breach of an express warranty claim, rather than for breach of a warranty of merchantability.  This is a sensible view, because otherwise the two claims would be exactly the same.

No circuit court appears to have discussed this precise issue.  However, several district courts have all reached a similar understanding about the implied warranty of merchantability.  In a recent case, purchasers of washing machines alleged an implied warranty of merchantability because of a defect that caused the machines to stop washing mid-cycle and required a restart.  *Tietsworth v. Sears Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009).  After considering the issue, the court determined that the "ordinary use" of a washing machine should be considered in broad terms.  Specifically, the court held that the ordinary purpose is to "clean[] clothes."  *Id.* at *36-37.  Because Plaintiffs did

not allege that the machines failed to clean clothes, the court dismissed the merchantability claims.

Likewise, another district court examined the "ordinary purpose" of an automobile in a broad sense. *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006). The purchaser of a vehicle alleged that it was not equipped with a front license plate holder as Texas law required, and that, consequently, the vehicle was not fit for its "ordinary purpose" of being legally driven on Texas roads. The court held, however, that "[t]he sole ordinary purpose of a vehicle is to provide transportation."

The main case Plaintiffs cited in support of their narrow reading of "ordinary purpose" is *Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky. Ct. App. 1978). However, in this Court's view, *Mayes* does not support Plaintiffs' argument. There, the Kentucky Court of Appeals held that the a truck was not fit for its ordinary purpose where it had a defective frame that caused "the various moving parts of the truck [to be] subjected to unusual stress and wear." *Id.* at 485. The Kentucky Court of Appeals found that, over time, the entirety of the vehicle would be become negatively affected by the defective frame. Thus, the defect went to the ordinary purpose of the vehicle as it prematurely aged the vehicle and left it unfit for use. Here, on the other hand, Plaintiffs do not allege that the presence of BPA would eventually render the bottle unfit for its ordinary purpose of holding liquids.

This Court agrees with the central point of the Code commentary as amplified in these two district court opinions. Consequently, this Court finds that the ordinary purpose of a drinking bottle is to hold liquid for drinking. *See Helen of Troy, L.P. v. Zotos Corp.*, 511 F. Supp. 2d 703, 720 (W.D. Tex. 2006) ("Just as carrying passengers is an ordinary purpose of a

pick-up truck, containing any quantity of liquid is an ordinary purpose of bottles.").  Plaintiffs do

not allege that Defendant's bottles failed to serve this purpose.  This Court concludes that

Plaintiffs' claim for breach of implied warranty of merchantability under UCC § 2-314 fails as a

matter of law where the Sigg bottle serves all purposes necessary as a liquid drinking container

and does not endanger the health of the user in any way.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED on their

argument of insufficient pleading.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is SUSTAINED IN

PART and Plaintiffs' claim for breach of implied warranty of merchantability is DISMISSED

WITH PREJUDICE.

This is not a final order.

cc:     Counsel of Record